## In re Maidencreek Township Roads.

*George B. Balmer*, for petitioner; *Lloyd M. Schaeffer*, for exceptants.

SHANAMAN, J., April 4, 1930.—"The petition for the view lies at the foundation of the proceedings to lay out and open a township road:" In re Road in Shenango Township, 88 Pa. Superior Ct. 51, 52. The petition in the present case prayed for the opening of two new roads, as follows:

"No. 7. Beginning at the northern side of the State Highway leading from the Halfway House to Leesport at a point seventy-five feet southeast of the junction of public roads at Kindt's Corner, and ending at the western side of a public road leading from Evansville to Moselem at a point five thousand sixty feet westwardly (measured along the said road) from the Iron Bridge over Maiden Creek at Evansville.

"No. 8. Beginning at a point in the present road leading to Shoemakersville at a point five hundred and fifty feet southeast of the intersection of another road leading to Shoemakersville, said point being the northwest terminus of the road No. 3 proposed to be vacated, and ending in the above-mentioned road No. 7 at a point approximately fourteen hundred feet south of the above-mentioned intersection and approximately two hundred feet southwest of the present road No. 3 proposed to be vacated."

It will be observed that one of the termini of the proposed road No. 8 is an intermediate point in the proposed road No. 7, and is described and located in the following language: ". . . . and ending in the above-mentioned road No. 7 at a point approximately fourteen hundred feet south of the above-men-

tioned intersection and approximately two hundred feet southwest of the present road No. 3 proposed to be vacated." This alone renders the proceeding fatally defective. "The petition for the view should do no more by way of description of the road than state the termini:" Road in Shenango Township, *supra*, page 53. Not only was the petition fatally defective because it thus described an intermediate point in the road No. 7 proposed to be opened, but it was fatally defective for another reason. The plan accompanying it was prepared by the petitioner, submitted to the viewers, and returned with their report. It portrayed a precise surveyor's location of the due courses of the two proposed roads as desired by the petitioner, and as, in fact, favorably reported by the viewers. The description of the roads as contained in the viewers' report is a faithful reading of the engineering curves, radii, stations, tangents and total length in feet and fractions of feet, as numerically and graphically portrayed on the plan. In Franklin Township Road, 54 Pa. Superior Ct. 293, the court said, at page 297: ". . . . the unusual and improper method was adopted of attaching to the petition a draft which not only located the termini of the proposed road but located it for the entire distance. This is the first instance which has come to the writer's notice of a draft fixing the location of the entire length of a proposed road being attached to a petition for viewers." "The law has been well settled in this state since the Act of 1836 went into force that it is fatal error to designate an intermediate point or points between the termini of a proposed road, either in the petition or the order to viewers, or both:" Id., page 298.

Although, for the reasons above stated, the exceptants are entitled to have the viewers' report quashed, we have carefully considered the proceeding upon the facts and have concluded that the report should be disapproved upon the merits. In Benton Township Road, 41 Pa. Superior Ct. 57, there was a petition and a favorable report by the viewers. Exceptions were filed by the supervisors, first, that the road was unnecessary and only of private benefit, and, second, that it would be burdensome upon the taxpayers. After hearing and testimony taken, the court sustained the exceptions, disapproved the report and dismissed the petition, at the cost of the petitioners. The Superior Court, in affirming, said, at page 59: "The act of the court in passing upon a report of viewers is not merely ministerial; but in the performance of that act a judicial discretion is to be exercised," and, at page 60: ". . . the Judge of the Court of Quarter Sessions is vested with discretion to approve or disapprove the report. That in the exercise of that discretion he may consider the question of the necessity for the proposed road does not seem to be open to question."

The facts appear to be as follows. The City of Reading built a lake or impounding dam in the Townships of Ontelaunee and Maidencreek. The lake has flooded certain township roads and will eventually flood more extensive portions of them. The city thereupon constructed main road No. 7 and spur road No. 8 to take the place of those destroyed or rendered impractical. After the city had built these roads it petitioned the court to open them for public use. Viewers were appointed, who, after hearing and testimony taken, reported favorably. The township supervisors filed exceptions, which upon argument are taken before the court for adjudication.

From the testimony taken before the viewers and the blueprint accompanying their report, it appears that the flooded or impaired roads are as follows: Road No. 2. This road, 10,890 feet in length, runs north from the stone bridge on the state highway running between Shoemakersville and Halfway House. Said road No. 2 skirts the west shore of the Maidencreek stream, at

irregular distances from it, and is now unusable up to the Perryville Road at the Maidencreek and will ultimately be flooded as far as Evansville. It continues in a northerly direction into Moselem. Spur road No. 3. This road, 890 feet in length, runs west from a point in road No. 2, at or about the viaduct and connects with the road to Shoemakersville. Spur road No. 4. This road, 760 feet in length, is farther north than spur road No. 3 and, like it, runs west from a point in road No. 2 and connects with a road to Shoemakersville.

In place of these three destroyed roads, the city has built and seeks to open as a public township road: Road No. 7. This road, 10,521.7 feet in length, runs in a general direction north and south and lies west of and roughly parallels destroyed road No. 2. Road No. 7 begins in the state highway above mentioned and runs to the Perryville Road above mentioned. As road No. 2 roughly skirted the west bank of the Maidencreek stream, so road No. 7 roughly skirts the west shore of the lake formed by damming the Maidencreek. Road No. 8. This road, 934 feet in length, is a spur road and runs westwardly from road No. 7. It lies to the south of destroyed road No. 3 and close to and roughly parallel with that road.

The city did not deem it necessary to build any road in place of destroyed spur road No. 4.

The parties agreed at the hearing before the viewers that the dam and lake necessitates the vacation of roads Nos. 2, 3 and 4. These roads were rough dirt roads—No. 2 on a solid foundation. The new roads are oil-bound macadam—No. 7 being partly built on a fill and including a viaduct. As the ground was at places soft and spongy, some drainage and filling was necessary in the construction of road No. 7. The city spent $145,380 for roads Nos. 7 and 8, including the bridge and viaduct, which cost $64,345. It proposes to present the two roads to Maidencreek without cost, except that the township will be liable for their maintenance.

The cost to the township would appear to be about $1500 a year to maintain roads Nos. 7 and 8, which will not stand up without maintenance and are not the best type of road for heavy traffic. The old road No. 2 was the less expensive in upkeep and was preferable for heavy traffic. It was admitted that roads Nos. 7 and 8 are the shortest practical roads between their respective termini. The present debt of the township is $10,500, its tax rate 10 mills, its assessment $1,443,300, and its mileage of township roads 22 to 23 miles.

Considerable depopulation has resulted from the necessary condemnation of surrounding properties by the city. Both roads Nos. 7 and 8 now run through city property entirely on both their sides and throughout their entire length. There are no residents along the entire length of the roads. Although road No. 2 was used considerably by cement trucks from Evansville cement works, the bridge over the Maidencreek will eventually be flooded at Evansville. A few families in Perry Township used roads Nos. 3 and 4. Only thirteen resident property owners will be benefited by the proposed roads. These live in the general neighborhood of spurs Nos. 3 and 4. Their total assessed property valuation is $20,703. They are not asking for the opening of the road. The total assessed valuation of the township property west of the lake is $38,734. These owners would be served by existing roads lying to the west of road No. 7, if that portion of road No. 7 between spur road No. 4 and the Perryville pike were open to the public.

We are of opinion, in view of the testimony that the proposed roads would be burdensome for the township to maintain, and in view of the township debt of over $10,000, which should be paid, and of the existing mileage of

roads to be maintained out of an income of approximately $14,500, and in view of the increased maintenance cost of roads Nos. 7 and 8, due to their oil-bound macadam construction, that the proposed roads would be unduly burdensome to the Township of Maidencreek. We are of opinion, further, that public necessity for the roads does not appear, in view of the testimony as to existing highways which serve each of the thirteen property owners of the district who would be affected, and in view of the testimony that such roads could be made available to them if that portion of road No. 7 between spur road No. 4 and the Perryville pike were opened.

We may say that we might be inclined favorably to view a proposition to open that portion of road No. 7 extending from its intersection with road No. 4 in a northerly direction to the Perryville Road. Unfortunately, even if the present proceedings were not subject to the legal objections which would entitle exceptants to have them quashed, we could not in the present proceeding legally approve less than the whole of road No. 7. In re Public Road in Benzinger Township, 115 Pa. 436: "The court should either unqualifiedly approve or disapprove the road laid out and returned. Unless satisfied of the necessity for the road, under the circumstances, the court may refuse approval, notwithstanding the favorable report of the viewers. . . . The court cannot approve a part only. . . . . The entire road, in the opinion of the court, may be unnecessary, and in that case it matters not that the court should believe a fraction of it necessary, for the road must be considered as a whole:" Id., page 439.

And now, to wit, April 4, 1930, exceptions 1, 3 and 4 are sustained, the viewers' report is disapproved and the petition is dismissed, at petitioner's costs.

From Charles K. Derr, Reading, Pa.